1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                            SOUTHERN DISTRICT OF CALIFORNIA

10

11   DARYL LOWRY;                        )   Civil Nos. 09-CV-0882-BTM (WVG)
                                         )              09-CV-0898-BTM (WVG)
12                    Plaintiff,         )              09-CV-1141-BTM (WVG)
                                         )
13        v.                             )   **REPORT AND RECOMMENDATION**
                                         )   **ON DEFENDANTS METROPOLITAN**
14   HERITAGE SECURITY, *et al.*,        )   **TRANSIT SYSTEM, TORRENCE**
                                         )   **JOSEPH, AND EDWIN AMBRIZ'S**
15                    Defendants.        )   **MOTION FOR TERMINATING**
     _____ )   **SANCTIONS**
16                                       )
                 AND RELATED CASES.      )
17   _____ )

18            Defendants Metropolitan Transit System ("MTS"), Torrence Joseph ("Joseph"), and Edwin

19   Ambriz ("Ambriz"), (collectively "Defendants"), move the Court to impose terminating sanctions

20   against Plaintiff Daryl Lowry ("Plaintiff") for his obstructive conduct and discovery abuses in the

21   three cases that he filed against Defendants and previously terminated Defendants Heritage Security

22   Services ("Heritage") and Jerrod Gressett ("Gressett") in 2009.  (882 Case: Doc. No. 144; 889 Case:

23   Doc. No. 110; 1141 Case: Doc. No. 120.)[1]  Defendants' Motion is based on the extensive history of

24   this litigation, Plaintiff's refusal to participate in discovery despite several Court Orders, and

25   Plaintiff's failure to appear for a Mandatory Settlement Conference ("MSC").  After considering all

26   of the above, and conducting a hearing on Defendants' Motion, the undersigned RECOMMENDS that

27   //

28   _____

     [1]/ All further references to documents on the Court's docket are to documents in the 09-CV-0882-BTM (WVG) matter.

                                            1

Defendants' Motion for Terminating Sanctions be GRANTED and that all three cases against the moving Defendants be DISMISSED.

## I. <u>BACKGROUND</u>

**A.**     <u>**General Background**</u>

Filed in April and May of 2009, Plaintiff's cases follow separate run-ins with security personnel aboard and around the San Diego Trolley.  According to Plaintiff, Defendants violated his civil and constitutional rights when they unjustly detained, arrested, or searched him without cause. Plaintiff also alleges that Defendants used unreasonable force to secure his detentions and arrests. Plaintiff claims that he suffered serious injuries as a result of Defendants' actions, including broken bones in his face, which required medical care.

Defendants claim that security personnel encountered Plaintiff aboard or around the San Diego Trolley after he drew their attention by either exhibiting signs of being under the influence of alcoholic beverages, refusing to produce proof that he had paid his trolley fare, or by creating disturbances aboard the trolley or on trolley property.  They claim that Plaintiff was consistently belligerent, refused to cooperate, escalated his disruptive behavior, resisted arrest, and actively attacked security officers after being contacted.

On December 11, 2009, all three cases were transferred to the undersigned's caseload. (Doc. No. 34.)  On May 20, 2011, Defendants Heritage and Gressett filed a Motion for Terminating Sanctions ("first sanctions motion"), citing Plaintiff's obstructive conduct and discovery abuses as justification for dismissal of the cases against them.  (See Doc. No. 88.)  On July 7, 2011, this Court issued a Report and Recommendation to the Honorable Barry Ted Moskowitz, United States District Judge, recommending that Defendants' Motion be granted.  (Doc. No. 103.)  On July 11, 2011, this Court issued a stay on discovery in all three cases, pending the resolution of the first sanctions motion. (Doc. No. 102.)  On April 26, 2012, Judge Moskowitz adopted in full this Court's Report and Recommendation, and Plaintiff's cases were dismissed as to Defendants Heritage and Gressett only. (Doc. No. 120.)  The remaining Defendants did not join in the first sanctions motion.

On July 27, 2012, this Court issued an Amended Scheduling Order which lifted the stay on discovery in all three cases for a period of sixty days.  (Doc. No. 131.)  The Court ordered that

1   Defendants shall have the opportunity to take Plaintiff's deposition and conduct any follow-up factual

2   discovery related to the deposition on or before September 21, 2012.  Id. at 1.  Although fact

3   discovery had closed on June 10, 2011, the Order made clear that fact discovery was being opened

4   for this limited purpose, as Defendants had not yet been able to secure Plaintiff's deposition

5   testimony.  (Doc. No. 69 at 2; Doc. No. 131 at 1.)

6          On August 15, 2012, Plaintiff filed a Motion for Protective Order, asking the Court to issue

7   an Order excusing him from being deposed.  (Doc. No. 135.)  On August 23, 2012, the Court denied

8   Plaintiff's Motion for Protective Order, stating,

9          Plaintiff's instant Motion fails to provide any good cause for a Court Order excusing
           him from being deposed.  This action was filed over three years ago, and Plaintiff's
10         deposition is necessary in order for the case to proceed.  Plaintiff, having filed the
           lawsuit, may not continue to stall these proceedings by filing a Motion for a Protective
11         Order that is devoid of any reason as to why he should be excused from being
           deposed.  With the fact discovery deadline rapidly approaching, Plaintiff must sit for
12         his deposition and begin cooperating with opposing counsel in order to avoid possible
           additional sanctions.

13

14   (Doc. No. 137 at 2.) (emphasis added)

15          When the Court lifted the stay on discovery, it also set an MSC to be held on August 27,

16   2012.  (Doc. No. 131.)  Although Plaintiff submitted an MSC statement on August 20, 2012, in

17   compliance with the Court's Order, he failed to appear for the MSC.  (Doc. No. 131 at 3.)

18          On August 27, 2012, as a result of Plaintiff's failure to appear for the MSC or make himself

19   available by telephone, the Court issued an Order to Show Cause ("OSC") and set a hearing in the

20   undersigned's courtroom for October 2, 2012.  (Doc. No. 140.)  Plaintiff failed to appear for the OSC

21   hearing.

22          Defendants incorporate the tortured history of this litigation into the instant Motion for

23   Terminating Sanctions, and also address specific grievances that have occurred since Judge

24   Moskowitz granted the first sanctions motion on April 26, 2012.  (See Doc. Nos. 120, 144.)  The

25   Court will take this opportunity to revisit the extensive chronology of this litigation, and will then

26   address Defendants' specific grievances.[2]

27   _____

28   [2] / The Court will incorporate the discussion set forth in its July 7, 2011, Report and Recommendation to Judge Moskowitz on Defendants Heritage and Gressett's Motion for Terminating Sanctions.  (Doc. No. 103.)

**B.     Procedural Background**

**1.     March 2, 2010: Plaintiff's First Documented Phone Call to the Court**

On March 2, 2010, Plaintiff called the undersigned's chambers and asked the clerk about a default judgment.  During the conversation, Plaintiff indicated that he would have Defendant Gressett arrested for forgery if he appeared at the Early Neutral Evaluation ("ENE") Conference.  The clerk advised Plaintiff that the issue would be resolved at the ENE Conference, and that no preemptive measures could be taken.

**2.     October 18, 2010:  Early Neutral Evaluation Conference**

On October 18, 2010, the undersigned convened an ENE Conference.  Fearing for their safety, counsel for Defendants requested that the Court have security present during the ENE.  Plaintiff had apparently left several aggressive voicemail messages for counsel, and they felt so threatened that they sought a restraining order against Plaintiff.  The Court took the extraordinary measure of having two United States Marshals Deputies present for the duration of the ENE.  In person, the undersigned observed that Plaintiff was at times visibly agitated and belligerent, expressed that he was "pissed," and proclaimed:  "I ain't afraid of no one.  I won't let anyone touch me," referring to his confrontation with trolley security.  Additionally, Plaintiff directed his aggression towards Defense counsel personally, calling them liars.  It was clear to the undersigned that Plaintiff held an intense emotional stake in his cases, had difficulty controlling his emotions, and intensely disliked Defendants and their counsel.  Before concluding the ENE, the undersigned advised Plaintiff to conduct himself civilly and explained that the Court would grant him some leeway, but would not ignore the rules simply because he was proceeding *pro se*.  Plaintiff confirmed that he understood and said that he saw no problems with following the rules.

**3.     December 10, 2010:  Case Management Conference**

On December 10, 2010, the undersigned convened a telephonic Case Management Conference ("CMC") and quickly realized that Plaintiff could not control himself over the telephone.  Plaintiff often went on emotion-fueled rants about his injuries and what he perceived to be delay tactics by Defense counsel.  He routinely interrupted the undersigned, alleged that Defendants were trying to take advantage of him, and asserted that he would not back down.

### 4.        January 6, 2011:  Status Hearing

On January 6, 2011, the undersigned held a Status Hearing to allow Plaintiff the opportunity to air his grievances, as he had called the undersigned's chambers three times after the CMC and expressed dissatisfaction with the judicial process and Defendants.

On December 28, 2010, Plaintiff called chambers, spoke with the undersigned's law clerk, and stated that he was going to "cheat" despite the undersigned telling him he could not do so. Plaintiff also proclaimed that he  was going to appeal Judge Moskowitz's dismissal of his state forgery claim, and announced:  "To hell with what the judge says.  I'm coming after them [Defendants]."

On Thursday, December 30, 2010, at 7:15 p.m., Plaintiff left a message on chambers voicemail, stated that he may have to leave the state for family reasons, and said that he wanted to meet with the Court on Monday, January 3, 2011, to discuss his cases.  Plaintiff expressed impatience at the pace of the litigation and stated:  "We have to do something.  I'm not going out like a sucker. . . When I do come back, I'm gonna hit 'em double."  The next day was an observed court holiday and, as a result, the chambers staff did not return Plaintiff's phone call.

On Sunday, January 2, 2011, Plaintiff left a markedly more agitated message on chambers voicemail and expressed his strong displeasure that his first message was not returned.  He stated: "I'm not appreciating everything that's going down and what's going down." He demanded to speak directly to the undersigned and proclaimed:  "I'm standing up for my rights.  I'm a veteran and I'm pissed.  I'm very, very, very upset.  I don't like the tactics they're trying to pull.  I don't like what the federal courts are trying to pull.  And like I said, I will go to the media."[3]  The overall tone of this message was threatening, not only towards Defendants but also towards the Court itself.

In response to Plaintiff's hostile messages, the Court convened a Status Hearing on January 6, 2011, at 8:00 a.m., despite the fact that the undersigned had the "criminal duty" responsibilities during that week and civil matters are generally not heard as a result.  The Court held the hearing on

---

[3]/  On October 11, 2012, during a hearing on Defendants' Motion for Terminating Sanctions, Plaintiff told the Court that his brother-in-law works for CNN, and Plaintiff was going to tell him about the hearing.  On October 16, 2012, in an *ex parte* communication that Plaintiff attempted to file with the Court, he reiterated that he was going to talk to his brother-in-law, a CNN employee, about the sanctions hearing in the undersigned's courtroom.

the record, ordered Plaintiff's personal appearance to avoid another disruptive telephone conference, and allowed counsel for Defendants to appear telephonically.  The Court again took the extraordinary measure of having United States Marshals Deputies present in the courtroom during a civil proceeding.

The undersigned further admonished Plaintiff about the aggressive and threatening nature of his communications with the Court, advised him that such behavior was not acceptable, and generally cautioned him that sanctions may be forthcoming for continued unacceptable behavior.  The undersigned also advised Plaintiff against engaging in further substantive *ex parte* communications with the Court.

### 5.  March 25, 2011:  Discovery Hearing

On March 25, 2011, the undersigned convened a Discovery Hearing after Plaintiff apparently refused to answer several special interrogatories.  The Court also learned that Plaintiff continued to engage in unacceptably aggressive and threatening behavior towards Defense counsel. Specifically, Plaintiff continued to leave threatening voicemail messages for counsel, including the excerpts below from a March 16, 2011, message:

- Hey Sam Sherman.  How dumb do you think I am?  Man you're stupid, do you know what?  Okay, now I want to see all the citations I signed.  There was only one.[4]

- So you know what, here's the deal, I'm gonna fuck you just for that man. You're through, okay?  Your season is over with man, I'm telling you.  This is fun.  I love this shit.  Oh man, this is great.  You're an idiot man, but it's gonna be fun.[5]  I'm gonna fuck you for this.  I'm going to the library right now and type this shit up...[6]

- Fuck you and the horse you rode in on, okay.  Later.

---

[4]/ During the October 11, 2012, sanctions hearing, Plaintiff once again demanded to know, "Where's the citations at?"

[5]/  During the October 11, 2012, sanctions hearing, Plaintiff proclaimed, "I want to go to trial to tell you the truth.  It would be fun."  A few minutes later, he announced, "I want to go to trial, I want to dance," and also stated, "We gonna have some fun."

[6]/ On August 9, 2012, Plaintiff stopped his deposition and refused to continue the proceedings, telling Defense counsel, "I'm going over here to see the judge, and I'm going to type this shit up, man."  (Doc. No. 144 at 8.)  During the October 11, 2012, sanctions hearing, Plaintiff told the Court that he was going to the library that day to "type some stuff up."

1   (Doc. No. 75 at 4.)[7/]

2       During the Discovery Hearing, the Court read the entire transcribed message to Plaintiff,

3   who confirmed its accuracy: "Yeah.  I was pissed.[8/]  I was upset, very upset, because of what they're

4   trying to do -- motion to bring people into my life and invade my private life.  I don't like that.  That's

5   what they're trying to do.  They want to find out my address, where I live at - ."  (Doc. No 83 at 9.)

6       After recounting Plaintiff's continued behavior, the Court verbally admonished him that

7   continued obstreperous or obstructive conduct <u>could result in sanctions, including a recommendation</u>

8   <u>that his cases be terminated.</u>  The Court then ordered Plaintiff to respond to certain special

9   interrogatories with guidance on how he could answer them.

10       After the hearing, the undersigned issued a written order that reiterated the verbal orders

11   above and again gave a detailed admonishment to Plaintiff that sanctions could issue.  (Doc. No. 75.)

12   Specifically, Plaintiff was <u>admonished in no uncertain terms that case-dispositive sanctions could be</u>

13   <u>recommended and imposed</u> if he continued his unacceptable behavior, failed to prosecute, or further

14   delayed his three cases.  <u>Id.</u> at 4-6.

15         **6.**   **June 24, 2011:  Hearing on Defendants Heritage and Gressett's Motion for**
        **Terminating Sanctions**

16

17       On June 24, 2011, the undersigned conducted a hearing on the Motion for Terminating

18   Sanctions filed by Defendants Heritage and Gressett.  At the sanctions hearing, the Court questioned

19   Plaintiff about statements that he had made to Defendants during their first attempt to take his

20   deposition.  (Doc. No. 103 at 14.)  Defendants had properly noticed Plaintiff's deposition for April

21   28, 2011, and secured a videographer and court reporter to be in attendance.  However, the deposition

22   ended when Plaintiff announced that he was represented by an attorney named Alan Spears, and that

23   Mr. Spears had instructed him not to answer any deposition questions.  (Doc. No. 103 at 11.)  Mr.

24   Spears testified at the sanctions hearing and emphatically denied that he had ever represented Plaintiff.

25

26   _____

27   [7/] All page number references to documents on the Court's docket refer to the CM/ECF pagination, not the document's native pagination.

28   [8/] In an *ex parte* phone call to chambers on October 18, 2012, Plaintiff told the undersigned's clerk that he was "pissed" after the October 11, 2012, sanctions hearing, and as a result he attempted to file an *ex parte* letter with the Court.

<u>Id.</u>  He further denied that he had instructed Plaintiff to refrain from answering any deposition questions.  <u>Id.</u>

//

After Mr. Spear's testimony, the undersigned questioned Plaintiff about the representations he had made to Defense counsel at the deposition, and the basis for his statements:

THE COURT:  Let me finish the question before you respond, all right?  **Did you believe that Mr. Spears was your attorney?  He represented you?**

MR. LOWRY:  **In a way, I thought that he, you know, he expressed interest.  He expressed interest, you know.  Me thinking -- I just wanted help.**

THE COURT:  **I understand that, but did you think that he was your attorney as of that day?**

MR. LOWRY:  **I don't know.  I can't say.  I don't know.  He talked like he could, but I don't know.**  I just – you know, it was 4:00 o'clock in the morning.

THE COURT: All right.  **Now, did Mr. Spears tell you not to answer questions at your deposition?**

MR. LOWRY:  **No, he didn't tell me,** and he told me like this that I could take the time, yeah, to push it back.  I'm -- I wasn't trying to do anything illegal by that.

THE COURT:  I'm not asking you that.

MR. LOWRY:  Yeah, but --

THE COURT:  But did you contact the attorneys for Heritage or MTS [Defendants] and ask for a delay in the deposition?

MR. LOWRY:  No, I didn't.  No.

THE COURT:  And when you got to the deposition, did you ask for a delay at that point?

MR. LOWRY:  I -- to retain counsel.

THE COURT:  No.  No.

MR. LOWRY:  To retain counsel.

THE COURT:  **Well, from what I've read, you told them that you were not going to answer any questions because your attorney told you not to answer questions.**

MR. LOWRY:  **I stated -- well, yeah, I did state it like that, but I should have stated it another way.**  Like I told you, I'm not the most experienced person in the world.

THE COURT:  Yeah, but the truth is the truth.

MR. LOWRY:  Yeah.

THE COURT:  You don't have to be experienced to tell the truth.

MR. LOWRY:  Yeah.  Well, that's what I stated, and, like I say, I wasn't trying to delay anything.  They can ask any questions they want, but the questions that I stated in my complaints are the truth, and that's all I have to state right there...[9]

(Doc. No. 103 at 14 - 15.)

### 7.   August 27, 2012:  Mandatory Settlement Conference

On May 18, 2012, Plaintiff sent a letter to Judge Moskowitz, making several demands. (Doc. No. 122.)  In the last paragraph of his letter, Plaintiff stated, "I would like to have a settlement hearing by next month.  And also a hearing within the next two weeks and I want everybody there in the courtroom not in there [sic] offices that stops, I want them in the courtroom with me."  Id. at 4.

On July 27, 2012, this Court issued an Amended Scheduling Order, which set a telephonic MSC to be held on August 27, 2012, at 9:00 a.m.  (Doc. No. 131 at 3.)  The parties were ordered to submit confidential settlement statements directly to chambers no later than August 20, 2012.  Id. Expert witness discovery dates were also issued.  Id. at 2.

On August 20, 2012, in compliance with the Order, Plaintiff submitted a settlement statement to the Court.  A CSO at the front door of the courthouse called chambers and said that Plaintiff was outside of the building.  The undersigned's clerk answered the phone and asked the CSO to instruct Plaintiff to bring his settlement statement to the Clerk's Office located next door to the courthouse.  Chambers received the statement from the Clerk's Office, stamped August 20, 2012.

On August 23, 2012, this Court issued a Minute Order, which instructed counsel and parties to appear personally in the undersigned's chambers for the MSC, rather than participate telephoni-cally.  (Doc. No. 138.)  The date and time of the MSC did not change.  (Doc. Nos. 131, 138.)  On August 27, 2012, Plaintiff failed to appear at the scheduled MSC.  Defendants were present and the undersigned requested that they wait for a half an hour to see if Plaintiff would appear.

Meanwhile, both the undersigned and the clerk made phone calls to Plaintiff using both

---

[9]  During the October 11, 2012, sanctions hearing, Plaintiff told the Court and Defense counsel, "My complaints are my depositions.  I shouldn't have to say nothing.  I'm sticking to what I have."   Plaintiff later stated, "I'll take your deposition, but there's only certain questions they can ask me."

1    phone numbers on file.  Both phone numbers were answered by a recorded message informing the

2    caller that Plaintiff was not accepting phone calls.

3    //

4           The undersigned noted that one consideration for Plaintiff's failure to appear could be that

5    the MSC was changed from a telephonic to personal appearance late in the prior week.  However, the

6    Court was unsuccessful in reaching Plaintiff by telephone.  At no time on August 27, 2012, or any

7    date thereafter, did Plaintiff contact the Court to explain the reason that he did not participate in the

8    MSC.[10/]   On August 27, 2012, the Court issued a Minute Order stating that it attempted to contact

9    Plaintiff by calling the two telephone numbers on file and, upon each call, the Court received a

10   recorded message that the phone number was not accepting calls at that time.  (Doc. No. 139.)

11          On September 19, 2012, Defense counsel filed a Declaration detailing fees and costs

12   associated with the failed attempt to hold an MSC.  (Doc. No. 122.)

13          **8.      August 2012: Failure to Comply with Discovery Deadlines**

14          On August 3, 2012, Plaintiff failed to provide proper expert witness designation pursuant

15   to the Court's Amended Scheduling Order and Federal Rule of Civil Procedure 26.  (Doc. No. 144

16   at 5.)

17          On August 9, 2012, Plaintiff unilaterally terminated his second noticed deposition after only

18   twenty-five percent completion, also in violation of the Court's Amended Scheduling Order.  (Doc.

19   No. 144 at 5.)  Defendants claim that Plaintiff was belligerent throughout the deposition and refused

20   to continue with the proceedings.  Id. at 8.  Plaintiff ended the deposition, stating: "You know what?

21   The hell with this man.  I'm done.  That's what you [sic] trying to do is get me all riled up.  I'm going

22   over here to see the judge, and I'm going to type this shit up, man."  Id.  According to Defendants,

23   Plaintiff also stated, "I'll be seeing you in court next week."  Id.

---

25   10/  On October 30, 2012, Plaintiff called the undersigned's chambers and told the clerk that he missed the MSC because
     he was confused when he received the Amended Pretrial Order issued by the District Judge, which was filed on August
26   22, 2012.  (Doc. No. 136.)  The Amended Pretrial Order set a final pretrial conference before Judge Moskowitz on
     December 5, 2012.  Id. at 1.  Plaintiff said that he thought the MSC had been moved to December 5, 2012, and that he did
27   not have a chance to explain his confusion to the undersigned.  However, Plaintiff was ordered to file a Response to the
     Order to Show Cause which was issued due to his failure to participate in the MSC.  (Doc. No. 140.)  Plaintiff did not file
28   a Response.  The undersigned also provided Plaintiff with the opportunity to state his position at the sanctions hearing on
     October 11, 2012.  At the hearing,  Plaintiff told the Court that he had received the Amended Pretrial Order on August 22,
     2012, and he "got confused."

09CV882, 09CV898, 09CV1141

**9.      October 2, 2012: Order to Show Cause Hearing**

On August 27, 2012, this Court issued an Order to Show Cause ("OSC") as to <u>why sanctions should not issue against Plaintiff</u> for his failure to participate in the MSC.  (Doc. No. 140.) An OSC hearing was set for October 2, 2012, at 8:30 a.m.  (Doc. No. 140.)  On that date, Plaintiff failed to appear for the hearing.  Mr. Roger Bingham and Mr. Sam Sherman were present on behalf of Defendants.  The Court waited for Plaintiff until 8:40 a.m., ten minutes after the OSC hearing was to begin, and then went on the record for the next twelve minutes, detailing the reasons for the OSC hearing and noting that Plaintiff had failed to appear.

After the failed attempt to conduct an OSC hearing, the undersigned's clerk tried to contact Plaintiff by telephone, but, once again, both of his phone numbers on file were not accepting calls.

On October 3, 2012, the day after the failed OSC hearing, Plaintiff appeared at the Clerk's Office to file a Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action.  (Doc. No. 153.) Despite his presence in the federal court complex, Plaintiff did not contact the Court to explain his failure to attend the MSC or the OSC.

**10.      October 11, 2012:  Hearing on Defendants' Instant Motion for Terminating Sanctions**

On October 11, 2012, the undersigned held a hearing on Defendants' instant Motion for Terminating Sanctions.  (Doc. No. 144.)  The Court began the hearing by asking Plaintiff for his correct contact information and explained that it was Plaintiff's responsibility to maintain updated records so that the Court and Defendants could have confidence that he was receiving important notifications about his cases.

The undersigned noted that this litigation has a "tortured history," and recited a chronology of events in Plaintiff's three cases, beginning with developments that occurred after Judge Moskowitz granted the first sanctions motion on April 26, 2012. (Doc. No. 120.) The undersigned also reiterated that Plaintiff has an obligation to sit and be deposed by Defendants, just as Defendants have the obligation to sit for depositions properly noticed by Plaintiff.

Both Plaintiff and Defense counsel were afforded the opportunity to make arguments at the hearing.  Defense counsel commented that, because Plaintiff had not filed a Response to the Motion

11

09CV882, 09CV898, 09CV1141

1   for Terminating Sanctions, counsel was unsure what Plaintiff would state during oral argument.

2   Defense counsel also noted that, despite numerous warnings issued by the Court, Plaintiff's pattern

3   of uncooperative behavior has continued to the present.

4   //

5      During Plaintiff's argument, he stated that a "deposition is for them to change the story

6   around," and told the Court yet again that his Complaints are his deposition.  Plaintiff also said that

7   he would sit for a deposition, but asserted that there are only certain questions that Defendants are

8   able to ask.  He noted that Defendants were "going outside the box" during his deposition by asking

9   him questions about his personal life.  He also represented to the Court that he had not yet received

10   any discovery responses from Defendants.

11      The Court questioned Plaintiff about his comment that his Complaints are his deposition,

12   and further instructed Plaintiff that walking out of a deposition due to disagreements about the

13   questions is not a proper response.  Addressing Plaintiff's comments about not receiving any

14   discovery from Defendants, the Court asked if Plaintiff had requested any discovery.  In response,

15   Defense counsel stated that Defendants had received the first discovery request from Plaintiff one

16   week before the sanctions hearing.  The Court instructed Plaintiff, "To get discovery, you have to

17   ask," to which Plaintiff replied that he has asked for discovery in his Complaints.

18      At the conclusion of the hearing, the Court told Plaintiff that he had not said anything

19   during the sanctions hearing to cause the undersigned to believe that Plaintiff's conduct in the future

20   would be any different than it was in the past.  The Court commented that Plaintiff's behavior has not

21   changed since Judge Moskowitz's Order granting the first sanctions motion, and that the Court does

22   not expect that another Court order requiring Plaintiff to sit for a deposition would have a different

23   result.  Plaintiff responded that he was "still fighting," to which the undersigned observed that

24   Plaintiff was fighting on his own terms.

25      Still standing at the courtroom podium, Plaintiff analogized himself to the Pittsburgh

26   Steelers defensive line, proclaiming, "We don't bend and we don't break either, we just hit you in the

27   mouth when you least expect it."

28   **C.**   <u>**Other Examples of Plaintiff's Behavior**</u>

09CV882, 09CV898, 09CV1141

1    The Court also has had the opportunity to witness Plaintiff's general conduct and attitude

2    towards Defendants and their counsel by examining the various correspondence and discovery

3    responses he has sent them.  As the Court found in its July 7, 2011, Report and Recommendation on

4    the first sanctions motion, overall, Plaintiff employs a hostile, argumentative tone and engages in

5    personal attacks, even in his discovery responses.  Sometimes Plaintiff sprinkles barbs and jabs in

6    with responsive answers, and other times his responses are completely non-responsive.  His writings

7    in general resist cooperation and seek to make the litigation process as difficult for Defendants as he

8    possibly can.

9    The CM/ECF dockets for all three cases are littered with threats, unrealistic demands, and

10   irrelevant remarks made by Plaintiff, demonstrating that he has little grasp, despite numerous

11   admonishments and instruction by the Court, of the proper way to conduct himself throughout the

12   litigation process.  In fact, it appears that Plaintiff is not interested in learning or understanding his

13   obligations in the litigation process.  Instead, he seems content to continue his pattern of communicat-

14   ing with the Court on an *ex parte* basis, and making demands that are simply not grounded in reality.

15   The undersigned acknowledges that, holding true to statements made at the ENE Conference over two

16   years ago,[11] Plaintiff has been afforded a considerable amount of leeway due to his status as a *pro se*

17   litigant.  However, it is clear to the Court that after repeated warnings and guidance, and even an

18   Order granting terminating sanctions against him, Plaintiff still believes that it is he, not the Court,

19   who holds the power to dictate the pace, scope, and overarching tone of the litigation.

20   More than three years after filing these lawsuits, and after all discovery has been closed,

21   Plaintiff conceded during the October 11, 2012, sanctions hearing, that he had just served Defendants

22   with his first request for discovery the week before the hearing.[12]  Further, Plaintiff continues to

_____

24   [11]  The Court held an Early Neutral Evaluation on October 18, 2010.  Before concluding the ENE, the undersigned
25   advised Plaintiff to conduct himself civilly and explained that the Court would grant him some leeway, but would not
     ignore the rules simply because he was proceeding *pro se*.  Plaintiff confirmed that he understood and said that he saw no
26   problems with following the rules.

27   [12]  At the October 11, 2012, sanctions hearing, Plaintiff stood before the Court and declared, "Why haven't I gotten any
     discovery from them? I haven't received anything."  Defense counsel then informed the Court that Plaintiff's Subpoena
28   to Appear and Testify at a Hearing or Trial in a Civil Action, filed on October 10, 2012, the day before the sanctions
     hearing, was the first request for discovery that Defendants had received from Plaintiff. (Doc. No. 153.) Plaintiff admitted
     that was true.

demand exorbitant settlement amounts from Defendants, and insists that the Court facilitate a settlement in his favor, all the while digging in his heels and refusing to play by the rules.  No matter how many times, or in how many different ways, the Court admonishes Plaintiff or takes time to explain his obligations, Plaintiff stands firm in his position that all three cases will move forward without any cooperation on his part.  He continues to submit *ex parte* communications to the Court, writing letters to both Judge Moskowitz and the undersigned, and calling both Judges' chambers in an attempt to explain his position directly to the Judges or clerks.

The following are some illustrative examples of Plaintiff's discovery responses to Defendants and *ex parte* communications with the Court over the course of the past two years:[13]

- December 19, 2011, Letter to Court:  Judge [Gallo] you tried to do me wrong and I'm not standing for it...there going to pay me for what I'm asking for and be happy this settlement will be $15.2 million dollars...  (Doc. No. 113 at 2.)

- December 19, 2011, Letter to Court:  I want this resolved on March 9, 2012 they've had there fun now it's my turn...  Id. at 2.

- January 31, 2011, Interrogatory Response:  No, never convicted of a felony, have you, what you are trying to do is get into my life in which by law has nothing to do with any of the cases at all, it called invasion of privacy.  (Doc. No. 88-4 at 16.)

- January 31, 2011, Interrogatory Response:  I stated all facts in the complaints so read that, I'm not typing this over again period.[14]  Id. at 20.

- May 18, 2012, Letter to Court:  I'm frustrated because you [Judge Moskowitz], the law firm of Higgs, Fletcher, and Mack, and Wheatley, Bingham, Baker think that I'm going to bow down you got life twisted.  (Doc. No. 122 at 2.)

- June 18, 2012, Letter to Court:  I don't fear you [Judge Moskowitz] or no man at all I want this to be taken care of NOW.  (Doc. No. 126.)

- June 18, 2012, Letter to Court:  ...we've not gone over Judge Gallo's trying to dismiss my case in which crying lawyer say that I'm threat to them, there just shook up because I got them on the ropes and they don't want to admit it.  Id. at 3.

- June 18, 2012, Letter to Court:  Judge Moskowitz, I demand this hearing and I want all evidence produced right then and there of what crime was committed if this is not produced I'm typing a lien to stop all trolleys and buses from leaving the yard and you will sign this by law...  Id. at 4.

---

13/ For the sake of readability, the undersigned will refrain from the use of "[sic]" when directly quoting Plaintiff's writings.  All direct quotations appear as written.

14/ During the October 11, 2012, sanctions hearing, Plaintiff stated, "My complaints are my deposition.  I shouldn't have to say nothing.  I'm sticking to what I have."

- October 10, 2012, Letter to Court:  ...and they think they are getting over Judge Gallo on the 10th of October if I don't have any of this in my hand or you try to help them in any way I'm going to let Judge Moskowitz know and then if this case is dismissed for any reason I know what my next move is going to be.  (Doc. No. 153 at 7.)

**D.**     **Developments Since First Sanctions Motion Was Granted on April 26, 2012**

        In addition to incorporating events that were detailed in this Court's July 7, 2011, Report and Recommendation, three specific developments since Judge Moskowitz's Order Granting Heritage and Gressett's Motion for Terminating Sanctions form the basis for Defendants' instant motion:  (1) Plaintiff's continued refusal to be deposed; (2) Plaintiff's failure to designate experts and submit expert reports; and (3) Plaintiff's failure to attend the MSC and subsequent OSC hearing.  (Doc. No. 144 at 8-10.)  All three of these grievances constitute violations of the Court's Amended Scheduling Order.  (Doc. No. 131 at 1-3.)  Plaintiff's refusal to be deposed also violates the Court's Order Denying Plaintiff's Motion for Protective Order, and Plaintiff's failure to participate in expert witness discovery violates Federal Rule of Civil Procedure 26.  (Doc. No. 137 at 2; Fed. R. Civ. P. 26.)  Each of these developments will briefly be set forth immediately below, but discussed more fully in Section II.

        **1.**     **Refusal to Participate in Noticed Deposition**

        Defendants have noticed and attempted to take Plaintiff's deposition on three separate occasions: (1) April 28, 2011: Plaintiff's deposition was terminated when he lied to Defense counsel and said that he had retained counsel and had been advised not to answer any deposition questions; (2) August 9, 2012: Plaintiff unilaterally terminated his deposition before it was twenty-five percent complete stating, "The hell with this, man;" and (3) August 31, 2012: Plaintiff failed to appear at the properly noticed continuation of his deposition.  (Doc. No. 144 at 13; Exh. B, Exh. C.)

        Defendants contend that three failed attempts are enough.  (Doc. No. 144 at 13.)  They argue that Plaintiff was warned by this Court on August 23, 2012, that he "must sit for his deposition and begin cooperating with opposing counsel in order to avoid additional sanctions."  (Doc. No. 137 at 2.)  Plaintiff chose to ignore that clear order, as well as the July 27, 2012, Amended Scheduling Order, which reopened fact discovery for the limited purpose of taking Plaintiff's deposition and

15                                                                    09CV882, 09CV898, 09CV1141

conducting follow-up discovery that stemmed from Plaintiff's deposition.  (Doc. No. 131.)

//

//

//

### 2.      Failure to Designate Experts and Submit Expert Reports

On July 27, 2012, this Court directed the parties to exchange a list of all expert witnesses expected to be called at trial no later than August 3, 2012.  (Doc. No. 131 at 2.)  The Order provided instructions as to the specific information that must be included in the expert witness list.  Id.  On August 3, 2012, Plaintiff filed an expert witness list.  (Doc. No. 132.)  Defendants contend that Plaintiff's submission is "grossly deficient" because he failed to provide information about the identity of the expert, contact information, or rates.  (Doc. No. 144 at 9.)  On August 7, 2012, Defendants served an objection to Plaintiff's designation, but as of the filing of the instant Motion, Defendants had received no response to their objection.  Id.

The Court also required each expert witness designated by a party to prepare a written report to be provided to all other parties no later than August 31, 2012.  (Doc. No. 131 at 2.)  As of the filing of the instant Motion, Defendants had received no expert witness reports from Plaintiff. (Doc. No. 144 at 10.)

### 3.      Failure to Attend Mandatory Settlement Conference

On August 27, 2012, as discussed in detail above, Plaintiff failed to appear for the Court Ordered MSC.  Counsel for Defendants were present and the Court was unsuccessful in reaching Plaintiff by telephone.  The Court issued an OSC, requiring Plaintiff to show cause why sanctions should not issue for his failure to appear, or to be available by telephone.  (Doc. No. 140.)

On September 19, 2012, Defense counsel, Mr. Bingham, filed a Declaration outlining his fees and costs associated with the failed MSC.  (Doc. No. 146.)  Defendants incurred $1,856.00 in attorney's fees, and $37.50 in costs related to the MSC.  Id. at 3.

On October 2, 2012, Plaintiff once again failed to appear, this time for the OSC hearing.

## II. <u>LEGAL STANDARD</u>

The Court may impose broad discovery sanctions for failure to obey a court order that compels discovery, up to and including "dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(v).

Dismissal and default are appropriate only when circumstances evidence willful disobedience of court orders or bad faith conduct. <u>Fjelstad v. Am. Honda Motor Co.</u>, 762 F.2d 1334, 1337 (9th Cir. 1985). "'[D]isobedient conduct not shown to be outside the control of the litigant' is all that is required to demonstrate willfulness, bad faith, or fault." <u>Henry v. Gill Indus., Inc.</u>, 983 F.2d 943, 948 (9th Cir. 1993) (quoting <u>Fjelstad</u>, 762 F.2d at 1341). The Court may consider the party's motivations, and can consider his "dilatory and obstructive conduct" in the case and other related cases. <u>See</u> <u>Smith v. Smith</u>, 145 F.3d 335, 344 (5th Cir. 1998).

In addition to a finding of willfulness or bad faith, the Ninth Circuit has provided the following five nonexclusive factors that the sanctioning court may use to determine whether case-dispositive sanctions are just:

    (1) The public's interest in expeditious resolution of litigation;
    (2) The court's need to manage its dockets;
    (3) The risk of prejudice to the party seeking sanctions;
    (4) The public policy favoring disposition of cases on their merits; and
    (5) The availability of less drastic sanctions.

<u>Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills</u>, 482 F.3d 1091, 1096 (9th Cir. 2007). Because "factors 1 and 2 support sanctions and 4 cuts against case-dispositive sanctions, . . . [factors] 3 and 5, prejudice and availability of less drastic sanctions, are decisive." <u>Valley Eng'rs v. Electric Eng'g Co.</u>, 158 F.3d 1051, 1057 (9th Cir. 1998). Further, "factor 5 involves consideration of three subparts: whether the court explicitly discussed alternative sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of dismissal." <u>Id.</u> "[W]hat is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations 'threaten to interfere with the rightful decision of the case.'" <u>Id.</u>

## III. <u>DISCUSSION</u>

Since Judge Moskowitz's April 26, 2012, Order Granting Defendants' Heritage and Gressett's Motion for Terminating Sanctions, Plaintiff has continued to engage in unacceptable

conduct, and Defendants continue to incur costs and attorneys' fees in an attempt to defend themselves.  As a result, Defendants' pursuit to defend themselves has become exceedingly and unreasonably difficult due to Plaintiff's active efforts to delay and obstruct the litigation process. Plaintiff has blatantly violated two recent Court Orders which required his appearance before the undersigned.  He demanded that the Court convene an MSC and require personal appearances by all parties, but he failed to participate when an MSC was scheduled.  Defense counsel, on the other hand, appeared in chambers on both occasions.  By failing to appear without prior notice, or a request to the Court to continue the date, Plaintiff demonstrated disregard for Defense counsel's time, as well as the undersigned's time.

The parties, Judge Moskowitz, and this Court have been involved in these three cases for more than three years.  The tumultuous chronology of events in this litigation came to an unfortunate climax on June 24, 2011, when Plaintiff lied to the undersigned in open court during the first sanctions hearing.  The Court noted in its Report and Recommendation that Plaintiff "actively lied about being represented by counsel to avoid being deposed," and then lied at the hearing when confronted with clarifying questions from the Court. (Doc. No. 103 at 18.) Despite the extensive time and effort spent by Defendants, Judge Moskowitz, and the undersigned, and what is likely to be significant costs incurred by Defendants, Plaintiff continues to recycle arguments and repeat stall tactics that he has been utilizing throughout this litigation. He continues to demand that Defendants settle all three cases for an incredibly large amount of money, and authors letter upon letter to the Court insisting that it facilitate a settlement in his favor.  He repeatedly proclaims that he has not received any citations, and weaves that irrelevant position throughout his arguments, despite the Court's reminders that he brought these civil lawsuits himself.

Moreover, Plaintiff still refuses to be deposed.  He maintains the position that everything he has to say is stated in his Complaints.  He continues to assert that Defendants may not ask him questions about his past.  As a result of properly noticing Plaintiff's deposition on three separate occasions, Defendants have incurred the cost of a videographer and court reporter on three separate occasions.  (Doc. No. 144 at 13-14.)

The District Judge has already granted a Motion for Terminating Sanctions against Plaintiff

which resulted in dismissal of two Defendants.  (See Doc. No. 120.)  However, although terminating sanctions were granted, Plaintiff has yet to cooperate.  While it does appear, and the Court certainly appreciates, that Plaintiff has significantly reduced the intensity of his threats directed towards Defendants and the Court, warnings and demands remain threaded throughout his *ex parte* communications with the Court.

The Court finds that Plaintiff's recent behavior, coupled with his arguments at the October 11, 2012, sanctions hearing, make clear that he has continued, and undoubtedly will continue, to exhibit the same type of uncooperative, discourteous behavior that he has demonstrated since the birth of these lawsuits.  After repeated admonishments and instructions from the Court, both verbal and written, Plaintiff continues to operate on his own terms, ignoring Court Orders, and providing empty excuses for his lack of cooperation.

These recent developments, along with Plaintiff's prior conduct which led this Court to recommend, and Judge Moskowitz to grant, the first sanctions motion, the inefficacy of the Court's warnings and orders, and the anticipated inefficacy of lesser sanctions, combine to inform the undersigned's strong belief that the only sanction that is practically available to the Court is to dismiss Plaintiff's cases against Defendants.

**A.**     **Plaintiff Has Acted With Willful Disobedience and Bad Faith**

Defendants base the instant Motion on the Court's prior determination regarding Plaintiff's willful disobedience of Court Orders and bad faith in lying to the Court, along with Plaintiff's belligerent and egregious conduct throughout the litigation.

Defendants also base their Motion on Plaintiff's recent behavior as evidenced by his refusal to sit for a deposition in violation of Court Orders, and his failure to adhere to the Court's Orders to identify experts, submit expert reports in accordance with Federal Rule of Civil Procedure 26(a)(2)(A), and attend the MSC.  (Doc. No. 144 at 5, 13-14.)  Defendants argue that when the aforementioned acts are considered in conjunction with his prior and ongoing misconduct, "Plaintiff's defiance is unquestionably willful and in bad faith."  Id.

**1.**     **Willful Disobedience of Court Orders and Bad Faith Conduct**

On July 27, 2012, and August 23, 2012, the Court ordered Plaintiff in no uncertain terms,

1    to allow Defendants to take his deposition.  (Doc. Nos. 131, 137.)  However, Defendants claim that,

2    on August 9, 2012, Plaintiff was belligerent throughout the deposition and unilaterally terminated the

3    deposition after only twenty-five percent completion.  (Doc. No. 144 at 8.)   He then filed a Motion

4    for Protective Order, looking to the Court to excuse him from having to sit for a deposition.  (Doc.

5    No. 135.)  After Plaintiff's Motion was denied, Defendants noticed Plaintiff's deposition again, and

6    this time, he failed to appear.  The failed appearance marked the third time that Defendants had to pay

7    for a videographer and court reporter, only to have Plaintiff refuse to cooperate.

8            This Court has previously determined that Plaintiff lied and acted in bad faith to avoid

9    deposition and frustrate Defendants' pursuit of the truth.  (Doc. No. 103 at 25.)  He lied both about

10   being represented by counsel and about counsel's advice that he should say nothing at the deposition.

11   Even assuming, *arguendo*, that Plaintiff was somehow mistaken that Mr. Spears represented him, he

12   could not possibly have been mistaken about Mr. Spears's alleged advice, as counsel stated in no

13   uncertain terms that he never advised Plaintiff to not answer deposition questions.  The undersigned

14   accepted Mr. Spears's representation, as he in fact would not have had any reason to give such advice.

15   Moreover, at the first sanctions hearing, Plaintiff admitted that Mr. Spears did not advise him to avoid

16   questioning.  In the July 7, 2011, Report and Recommendation regarding the first sanctions motion,

17   this Court found, "If this litigation is allowed to proceed, Plaintiff will certainly continue to evade

18   discovery[,] making it impossible for [Defendant Heritage] to defend itself."  Id.  As expected, this

19   foreshadowing turned out to be right on point.

20           On a separate occasion, Plaintiff was ordered to be deposed, and he failed to comply.  He

21   did not contact Defendants to let them know that he would not be attending, rather, he just failed  to

22   appear.  Further, Plaintiff knew that the Court did not have his correct phone number or a reliable

23   address to receive mail, but he did not take any action to correct those problems.  He failed to respond

24   to the OSC, as ordered by the Court, yet he appeared in the federal court complex the day after the

25   OSC hearing to file a subpoena which demanded discovery items from Defendants and included a

26   masked warning to the undersigned.  All of these actions demonstrate that Plaintiff is only willing to

27   participate in this litigation on his own terms.

28

This Court previously found that Plaintiff's intentionally deceitful conduct resulted in unnecessary expense to Defendants, yet another delay of the litigation process, and, more significantly, the frustration of Defendants' ability to engage in one of the most widely-used and informative discovery tools used in litigation today.  (Doc. No. 103 at 27-28.)  These developments factored into the undersigned's finding on July 7, 2011, that Plaintiff's conduct was in bad faith.

//

**B.**        **Terminating Sanctions Are Appropriate**

After considering the five factors that bear on whether case dispositive sanctions are just, the undersigned concludes that dismissal <u>is</u> a just and appropriate sanction.[15/]

**1.**        **Public Interest in Expeditious Resolution of Litigation**

This factor weighs in favor of dismissal, as Plaintiff's past and anticipated future conduct is the antithesis of expeditious resolution.  Plaintiff has continued to unnecessarily undermine the smooth flow of litigation, and the undersigned fully anticipates that he will continue to do so in the future.  Plaintiff has been informed numerous times and on many different occasions that his actions are stalling the litigation and that he must cooperate in order for the cases to move forward.  It is clear to the Court that Plaintiff only wants the cases to move forward if they advance in his favor, and his vision of a resolution is simply that Defendants pay him all, or substantially all, of the money he demands, which is in the multi-million dollar range.  The Court is at a loss to understand how Plaintiff continues to demand that the cases move expeditiously toward trial, when he refuses to be deposed, participate in expert discovery, and sent his first request for discovery to Defendants three and a half years after filing the lawsuits.  Therefore, were Plaintiff's cases allowed to proceed, the public's interest in expeditious resolution of cases will almost certainly not be satisfied.

**2.**        **The Court's Need To Manage Its Docket**

The Court's need to manage its docket is great, as the Southern District of California is one of the busiest districts in the nation.  Despite the Court's impacted docket, Plaintiff's behavior has

---

15/  The undersigned acknowledges that these factors are not "a mechanical means of determining what discovery sanction is just, . . . a series of conditions precedent before the judge can do anything, [or] a script for making what the district judge does appeal-proof," but merely "a way for a district judge to think about what to do."  <u>Valley Eng'rs v. Elec. Eng'g Co.</u>, 158 F.3d 1051, 1057 (9th Cir. 1998).  Nonetheless, these factors demonstrate that dismissal is just under the circumstances here.

necessitated the Court's direct intervention on numerous occasions over the past two years.  The undersigned has had to referee disputes that ordinarily do not materialize in the vast majority of civil cases on the Court's calendar.  Further, Plaintiff's numerous *ex parte* communications with chambers have consumed additional Court resources.  After repeated admonishments to cease his *ex parte* communications, in the week following the October 11, 2012, sanctions hearing, Plaintiff called chambers in an attempt to discuss the hearing, and submitted two separate letters to the Court, one which was filed and one which he asked the clerk not to file after he dropped it off at the Clerk's Office.

Further, the undersigned, his clerk, and a legal extern all spent time waiting for Plaintiff to appear for both the MSC and the OSC, to no avail.  The undersigned's calendar was blocked off for two hours for the MSC and one hour for the OSC.  This was time that could have been spent facilitating settlement in other civil matters on the Court's docket.  The Court fully expects that Plaintiff's three cases will continue to require its active supervision, and Plaintiff has given the Court no reason to believe otherwise.  The undersigned is mindful that Plaintiff is representing himself and that *pro se* litigants often require extra attention and time.  This is not a problem, and the undersigned welcomes the opportunity to assist *pro se* litigants to the extent that fairness, neutrality, and impartiality allow.  However, Plaintiff has taken advantage of the Court's resources, willingness to allow him leeway, and repeatedly has broken his promises to conduct himself in a civil and courteous manner in his dealings with the Court and counsel.  His behavior has resulted in numerous unnecessary court appearances, the frequent issuance of orders, and two extensive Reports and Recommendation, all of which typically do not issue, even in other *pro se* cases.  In the future, such a high level of supervision will undoubtedly continue to consume judicial resources that could be devoted to other matters.

Further, although the Court maintains thorough files for all of its civil cases, the circumstances surrounding this case have led to the creation and maintenance of an extensive file, much larger than most civil case files, as the Court has found it necessary to document every phone call, voice message, and the circumstances surrounding missed court appearances.  This is simply not an efficient use of judicial resources.  Plaintiff has hijacked this litigation from the beginning, stalling

the proceedings and refusing to cooperate with opposing counsel.  He has not given the Court any reason to believe that his behavior will be different going forward.  Therefore, the Court is left with no other option but to recommend to Judge Moskowitz that Defendants' Motion for Terminating Sanctions be granted.

//

//

### 3.    Prejudice to Other Parties From the Discovery Violations

"A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case."  Adriana Int'l Corp. v. Lewis & Co., 913 F.2d 1406, 1412 (9th Cir. 1990); see also Henry v. Gill Indus., Inc., 983 F.2d 943, 948 (9th Cir. 1993).  The foregoing quote succinctly and accurately reflects the prejudice Defendants have suffered and undoubtedly will continue to suffer.

Plaintiff's overall conduct in this case also plays a role in the undersigned's analysis. Plaintiff has conducted himself throughout this litigation in an aggressive, defiant manner that has led to unnecessary delay of the litigation process and difficulty for Defendants.  He has cooperated only when he felt like doing so and defied more than one Court Order because he disagreed with it.  The overall result of Plaintiff's conduct is that, three and a half years after these cases were filed, the parties are likely no closer to reaching a settlement or being prepared for trial than they were at the beginning of the litigation.  Discovery is a crucial part of litigation and allows each party the opportunity to obtain information and evidence to prove its case or defend itself.  However, when one party obstructs the process to such a degree that another party cannot engage in discovery, the prevented party ultimately cannot fully defend itself.

If Defendants cannot depose Plaintiff, they cannot pursue a critical litigation tool and are prevented from collecting evidence in their own defense as a result.  Defendants' inability to defend themselves not only prejudices them, it does so in a severe manner.

Finally, as stated in this Court's July 7, 2011, Report and Recommendation on the first sanctions motion, it is abundantly clear that the Court's Orders have little to no impact on Plaintiff's behavior, and he will continue with similar behavior into the future.  Plaintiff stood before this Court

at the sanctions hearing on October 11, 2012, and insisted that he would not answer all of Defendants' deposition questions because they have asked him about his past and everything that he wants to say is already in his Complaints. From the beginning, Plaintiff has unnecessarily made the discovery process excruciatingly difficult, if not impossible. As this Court stated in July of 2011, "Even if Plaintiff sits for deposition, the Court is certain that he will make every effort to disrupt the deposition, avoid answering questions, respond with extreme aggression or argument, and to generally disrupt [Defendant's] pursuit of <u>any</u> information that could even remotely help in its defense." (Doc. No. 103 at 31.) This Court's forecasts have proved to be correct. The Court also noted, "Although the Court could order Plaintiff's deposition, Plaintiff's demonstrated ability and willingness to lie and obstruct the process casts doubt over any testimony he may provide." <u>Id.</u> at fn. 10. This strategy has been Plaintiff's *modus operandi* throughout this case, as evidenced by his correspondence, discovery responses, and failure to comply with Court Orders, and there is absolutely no reason to believe that he can constructively participate in the future.[16] Moreover, as the Court found at the hearing on the first sanctions motion, Plaintiff will lie if he believes doing so would benefit him.

The Third Circuit Court of Appeals long ago saliently explained the rationale for imposing terminating sanctions for a plaintiff's obstructive behavior during discovery. The Court wrote:

> Appellants advance the argument that it was error for the trial court to penalize them with . . . dismissal without first ordering them to appear for their scheduled depositions. Rule 37 sanctions are contemplated when there has been virtually total noncompliance with discovery. Yet, a direct order by the Court . . . is not a necessary predicate to imposing penalties under Rule 37(d). When it has been determined that a party has willfully failed to comply with the rules of discovery, it is within the discretion of the trial court to dismiss the action. Litigants may oppose discovery requests by seeking a protective order from the court; they cannot be permitted to frustrate discovery by refusing to comply with a proper request. For courts to permit litigants to disregard the responsibilities that attend the conduct of litigation would be tantamount to "encouraging dilatory tactics." The dismissal sanction, although severe, is a necessary tool, both to punish in the individual action and to deter future abuses of the d i s c o v e r y    p r o c e s s .

<u>Al Barnett & Son, Inc. v. Outboard Marine Corp.</u>, 611 F.2d 32, 35-36 (3d Cir. 1979) (citations omitted) (overruled in part on other grounds). Unlike the district court in <u>Al Barnett</u>, this Court has ordered Defendant - twice - to appear for his deposition. (Doc. Nos. 131, 137.) The Court has even

---

16/ The root cause of this inability is, as the undersigned told Plaintiff at the October 2010 ENE, his intense emotions and detestation for Defendants and their counsel.

1   warned Plaintiff that terminating sanctions could issue if he does not comply with discovery. (Doc.

2   Nos. 75, 150.)  Without opposing discovery in Court, other than his Motion for Protective Order

3   which dealt only with his deposition and was denied, Plaintiff has taken it upon himself to dictate how

4   discovery shall proceed, which interrogatories he wishes to answer, to what extent he wishes to

5   answer them, and how and when depositions shall proceed–or not.  Plaintiff operates by his own rules,

6   and the rules by which Defendants are bound seem to matter little to him.

7         Not only have Defendants suffered serious prejudice to date, this Court is convinced that

8   they will continue to suffer severe prejudice into the future.  Such prejudice will increase by leaps and

9   bounds with the time for trial looming[17] and Defendants left without the ability to garner information

10   in their defense.

11         The Court understands that Plaintiff is a *pro se* litigant and recognizes that this has the

12   strong potential to pose challenges for Plaintiff and for the litigation process as a whole.  However,

13   the lack of respect for the Court and opposing counsel, and the disregard for any sort of attempt at

14   cooperation, leads this Court to the determination that granting Defendants' Motion for Terminating

15   Sanctions is the only option remaining.  Plaintiff cannot and will not continue to lead everyone

16   through an exhaustive maze, only to end back at square one.  The Court has spent a significant amount

17   of time and resources in an attempt to convince Plaintiff that cooperation is his only option.  However,

18   even a motion for terminating sanctions being granted has proved to be futile.

19         **4.**      **Public Policy Favoring Disposition on The Merits**

20         Although this factor ordinarily cuts against imposing case-dispositive sanctions, the

21   undersigned does not believe that this important public policy would be fulfilled if Plaintiff's

22   cases are allowed to continue.  Plaintiff's obstructive conduct will very likely mean that a true

23   adjudication on the merits may never be achievable in the end.

24         **5.**      **Whether Less Drastic Sanctions Are Available**

25         On March 25, 2011, April 26, 2012, July 27, 2012, August 23, 2012, August 27, 2012, and

26   September 14, 2012, the undersigned expressly notified Plaintiff that sanctions could issue. (Doc. No.

27

28

---

[17]/  On August 22, 2012, the District Judge filed an Amended Pretrial Order, setting the jury trial to begin on February 4, 2013.  (Doc. No. 136.)

09CV882, 09CV898, 09CV1141

75 at 5; Doc. No. 120 at 4; Doc. No. 131 at 2; Doc. No. 138 at 1; Doc. No. 140 at 1; Doc. No. 145 at 2.)  However, Plaintiff still proceeded to violate Court Orders, lie to the undersigned in open court, and successfully evade deposition.  The undersigned is certain that any sanction short of termination of these cases will ultimately fail to reign in Plaintiff's conduct or compel him to conform his behavior.  This assessment is based on the undersigned's observation of Plaintiff; multiple unheeded warnings, both informally on the telephone and in person and formally on the record and in written orders; his continued failure to abide by the Court's Orders; and his active obstruction of the litigation process.  Stern warnings have not worked, the possibility of lesser sanctions have not worked, and monetary sanctions will be empty and ineffective because Plaintiff has qualified to proceed *in forma pauperis* and does not have any assets.  (See Doc. Nos. 2, 3 (IFP motion and order granting motion).)

Moreover, issue and claim preclusion sanctions will also be ineffective.  Defendants will continue to suffer severe prejudice short of precluding Plaintiff from presenting evidence in support of all of the issues and claims in this case.  This is because Plaintiff has demonstrated a wholesale and routine propensity to prevent Defendants from gathering evidence in their own defense.  This is not a case where a party violated one isolated discovery order or refuses to produce just one document, the punishment for which could be to preclude evidence on a discrete issue or claim.  When a party demonstrates a systematic practice of obstructing an opposing party's discovery efforts, selective issue and claim preclusion will not ameliorate the overall prejudice the aggrieved party suffers.  As Defense counsel acknowledged at the October 11, 2012, sanctions hearing, Plaintiff's uncooperative behavior has been a "pattern."  Plaintiff's continued obstructive conduct will necessarily lead to the preclusion of a growing list of issues.

Based on experience and observation, the undersigned can come to no other conclusion that the only effective or practical solution here is dismissal.

**C.    This Case Compared to Other Cases**

Although termination of a plaintiff's case pursuant to Rule 37 is one of the most severe of sanctions, courts have imposed this sanction where appropriate.  In the context of depositions, most cases impose this sanction for missing or avoiding several depositions.  What sets the instant cases

apart from the ones below is Plaintiff's active deceit to thwart deposition, as opposed to passive avoidance.

In Pioche Mines Consol., Inc. v. Dolman, 333 F.2d 257 (9th Cir. 1964), the Ninth Circuit upheld the district court's entry of default against an individually-named defendant after he failed to appear for several depositions and his counsel informed the court that he would not appear for deposition due to poor health. Dolman, 333 F.3d at 266-70. Although there was "doubt as to whether claimed disability was genuine," id. at 266, the district court's entry of default was not a result of any active deception, but was based, *inter alia*, on the defendant's passive acts of not appearing for multiple depositions and indicating that he would submit to deposition on his own terms. See id. at 267-69.

In Hall v. Johnston, 758 F.2d 421 (9th Cir. 1985), the Ninth Circuit affirmed entry of default against a defendant who failed to appear at two noticed depositions without any justification. The sanctioned party had two opportunities to appear for two noticed depositions, but failed to appear at both without justification. Id. at 422. The sole basis for entry of default against the sanctioned party was his failure to appear at two depositions. See id. at 424-25. The Ninth Circuit affirmed the trial court's entry of default. Id. at 425. Significantly, beyond missing two depositions, there is no indication in Hall that the sanctioned party had acted improperly or in bad faith at any other time during the life of the case.

More recently, the Ninth Circuit affirmed, although by unpublished memorandum disposition, a district court's dismissal based on "failure to prosecute where [the plaintiff] failed to respond to discovery requests, attend her deposition, produce initial disclosures, submit a Pretrial Order, attend the final Pretrial Conference, or file an opposition to the defendant's Motion for Terminating Sanctions." Drumgoole v. Am. Airlines, Inc., 316 Fed. Appx. 606, 607 (9th Cir. 2009). All of the above conduct involved passive behavior such as failing to attend deposition.

Finally, the Seventh Circuit also recently affirmed dismissal of a *pro se* plaintiff's case for his "refusal to sit for a deposition and otherwise comply with discovery," which included failing to produce documents. Oliva v. Trans Union, LLC, 123 Fed. Appx. 725, 727 (7th Cir. 2005). Again,

1    this case involved a passive failure to attend deposition or produce documents, rather than overt

2    deceptive conduct.

3            Defendants' instant motion is based, in part, on Plaintiff's unacceptable conduct at two

4    depositions and his failure to attend a third deposition altogether.  The nature of Plaintiff's conduct

5    is significantly more reprehensible as compared to the cases outlined above, as he took the

6    affirmative, active step of lying in order to avoid the first deposition.  He then took the affirmative

7    step of filing a Motion for Protective Order asking the Court to excuse him from being deposed.

8    (Doc. No. 135.)  When the Court denied his Motion for a Protective Order, he chose not to appear

9    anyway.  As this Court previously found, actively lying is markedly more sinister than passive

10   avoidance by failing to appear.  Even one demonstrated incident of lying establishes the capacity and

11   willingness to obstruct the truth finding process, flouts the integrity of the process, and casts heavy

12   doubt on its fairness.  See Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 348-49

13   (9th Cir. 1995) (discussing deceit in the context of the Court's inherent authority to impose sanctions,

14   not under Rule 37; "It is well settled that dismissal is warranted where, as here, a party has engaged

15   deliberately in deceptive practices that undermine the integrity of judicial proceedings: 'courts have

16   inherent power to dismiss an action when a party has willfully deceived the court and engaged in

17   conduct utterly inconsistent with the orderly administration of justice.'") (citation omitted).

18           Here, Plaintiff lied to the Court at a hearing on the record, and then defied a Court Order

19   that he did not agree with.  The Court should not have to wait for more lies or defiant behavior to

20   surface before being able to act.  Simply put, Plaintiff's conduct in these cases has been utterly

21   inconsistent with the orderly administration of justice, and these cases are in line with the

22   aforementioned cases that have affirmed the imposition of terminating sanctions.

23   **D.    Defendants Should Bear Their Own Attorneys Fees and Costs for the MSC**

24           Although Defendants do not seek costs from Plaintiff in their Motion for Terminating

25   Sanctions, they filed a Declaration of attorney Roger P. Bingham regarding fees and costs associated

26   with the failed MSC. (Doc. No. 146.)  Mr. Bingham declares that Defendants incurred $1,856.00 in

27   attorneys fees and $37.50 in costs related to the MSC.  Id. at 3.  However, based on the balance of

28   equities, the undersigned recommends that fees and costs not be awarded to Defendants.

The Federal Rules of Civil Procedure require that the Court award Defendants "reasonable expenses, including attorney's fees" "[i]nstead of or in addition to" terminating sanctions. Fed. R. Civ. P. 37(b)(2)(c). The award of expenses under this rule is mandatory unless Plaintiff can show that his conduct was "substantially justified" or if "other circumstances make an award of expenses unjust." Id. Based on the discussion above, Plaintiff cannot show that his conduct was justified in any way, much less substantially so. However, as explained below, other circumstances render the award of costs unjust.

The practical reality here is that Plaintiff is proceeding *in forma pauperis* and has no assets against which Defendants could collect a costs award. (See Doc. Nos. 2, 3 (IFP motion and order granting motion).) Further, given Plaintiff's financial state, any award against him would likely impose an unjust burden. The undersigned does not wish to trivialize the fact that Defendants have incurred attorneys fees and costs as a direct result of Plaintiff's conduct, but the balance of equities nonetheless favors Defendants bearing their own costs here.

## V. CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS that Defendants' Motion be GRANTED and Plaintiff's claims in all three cases against Defendants Metropolitan Transit System, Torrence Joseph, and Edwin Amriz be dismissed.

This report and recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. Section 636(b)(1).

//

//

//

09CV882, 09CV898, 09CV1141

1    IT IS ORDERED that **no later than December 3, 2012**, any party to this action may

2  file written objections with the Court and serve a copy on all parties.  28 U.S.C. § 636(b)(1).  The

3  document should be captioned "Objections to Report and Recommendation."  The parties are

4  advised that failure to file objections within the specified time may waive the right to raise those

5  objections on appeal of the Court's Order.  Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

6  IT IS SO ORDERED.

7  DATED: October 31, 2012

8

9                                        Hon. William V. Gallo
                                         U.S. Magistrate Judge
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28